UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARON CHANEL DUKES,

       Plaintiff,

v.                                                                                      Case No. 1:10-cv-436
                                                                            Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on December 31, 1984 and is a high school graduate (AR 139, 344).[1] Plaintiff alleged a disability onset date of February 1, 1993 (AR 139, 339).[2] She had previous employment as a cashier at a Goodwill store (AR 201, 340). In her disability report, plaintiff identified her disabling conditions as: mildly mentally impaired; behavioral problems; forgetful; and, easily upset and discouraged (AR 200). On December 28, 2006, plaintiff filed applications for

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes a discrepancy with respect to plaintiff's alleged disability onset date. The decision denying benefits recites that plaintiff's alleged onset date of was February 1, 2003 (AR 14). Plaintiff's applications for DIB and SSI, and the agency's internal records, state an alleged onset date of February 1, 1993 (AR 121-22, 133, 139). Plaintiff's pre-hearing brief also recites this alleged onset date (AR 147). At plaintiff's hearing, the Administrative Law Judge noted that the alleged onset date presented to him was October 1, 2006 (i.e., the date plaintiff acquired sufficient quarters of coverage for DIB) (AR 15, 338). In response to the ALJ, plaintiff's attorney stated that the alleged onset date "was in '93" (AR 338). Since neither party has offered an explanation for an alleged onset date of February 1, 2003, the court will assume, for purposes of this opinion, that the ALJ's recitation of this date was a typographical error.

child's insurance benefits ("CIB"), DIB and SSI (AR 14). The Administrative Law Judge (ALJ) summarized plaintiff's history of disability benefits, including her receipt of SSI benefits as a child as follows:

> The claimant was previously eligible for Title XVI supplemental security income payments as a disabled child based upon an application filed on February 17, 1993. The claimant received supplemental security income payments for those months in which eligibility was established. By August 1, 1999, claimant's eligibility for supplemental security income payments had terminated because she no longer met the income requirements for such payments; eligibility for supplemental security income payments as a disabled child under 18 years of age was not re-established at any time after August 1, 1999.
>
> Concerning the applications before the undersigned, the earliest effective onset date is the date of attainment of 18 years of age, or December 30, 2002 in the instant case, the day before claimant's chronological 18th birthday. A disability onset date before December 30, 2002 would not entitle the claimant to any additional benefits.

(AR 14).

Given this history, the ALJ found that each of plaintiff's three claims carried a different disability onset date.

With respect to the claim for child's insurance benefits, the ALJ determined that "[a]s required by section 202(d) of the Social Security Act, to be entitled to child's insurance benefits, the claimant must have a disability that began before attainment of age 22, or December 30, 2006 in the instance case (20 CFR 404.2 and 404.360)" (AR 15).

With respect to the claim for DIB, the ALJ determined that plaintiff first became insured for DIB on October 1, 2006, and that she had acquired sufficient quarters of coverage to remain insured through September 30, 2010 (AR 15). "Thus, the claimant must establish disability on or before September 30, 2010 in order to be entitled to a period of disability and disability insurance benefits" (AR 15).

The ALJ addressed the Title XVI benefits (SSI) as follows:

Eligibility for Title XVI can be established no earlier than the filing month of the application before the undersigned, or December 2006 in the instant case. For these reasons, the pertinent period before the undersigned for evaluation of disability as an adult is from December 30, 2002 through the date of this decision.

(AR 15).

On April 13, 2009, the ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 14-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity

4

(determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has never performed substantial gainful activity (AR 17). Although plaintiff worked from 2005 through 2008, the amount of her wages (i.e., $1860 in 2005, $6,182 in 2006, $6,411 in 2007, and $1,210 in 2008) was less than the substantial gainful activity guideline amounts for the given years (AR 17). Second, the ALJ found that plaintiff had a severe impairment of mild mental retardation (AR 18). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 18-20). In this regard, the ALJ reviewed Listing 12.05 (*Mental retardation*) (AR 18-20). While the ALJ found that plaintiff had the deficits in adaptive functioning necessary to meet the requirements of any subsection of Listing 12.05, he found that plaintiff did not meet the functional requirements (i.e., the requirements in paragraphs A, B, C and D) to be considered disabled under any subsection of Listing 12.05 (AR 18-20).

The ALJ decided at the fourth step that plaintiff had:

5

>   the residual functional capacity to perform a full range of work at all exertional levels but with non-exertional limitations. Claimant is limited to the performance of simple, routine tasks and can maintain attention and concentration for two-hour blocks of time accommodated by normally scheduled breaks and lunch period. She requires a structured work environment with only occasional contact with the general public or supervisors. The claimant cannot be required to perform mathematical calculations.

(AR 20). The ALJ further found that plaintiff has never performed substantial gainful activity, and therefore had no past relevant work (AR 22).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs at all exertional levels in the national economy (AR 23). Specifically, plaintiff could perform approximately 9,000 jobs in the regional economy (defined as the State of Michigan) such as: assembly (4,000 jobs); inspector (2,000 jobs); and cleaners (3,000 jobs) (AR 23). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 30, 2002 (the day before plaintiff's 18th birthday) through the date of the decision (AR 23-24). The ALJ also found that with respect to plaintiff's application for CIB, she was not disabled on or before December 30, 2006, the date she attained age 22 (AR 24), and that she was not considered disabled for purposes of her applications for DIB and SSI filed on December 28, 2006 (AR 24).

### III. ANALYSIS

Plaintiff has raised two issues in her appeal.

**A. Does substantial evidence support the ALJ's step three determination that Ms. Dukes did not meet or equal Listing 12.05C, given that the ALJ failed to determine whether Ms. Dukes had obesity, and whether the obesity was an additional "severe" impairment?**

Plaintiff contends that she meets the requirements of Listing 12.05C and should have

been found disabled at Step Three of the sequential evaluation. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Listing 12.05 provides in pertinent part as follows:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\* \* \*

    C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App. 1. It is undisputed that plaintiff meets the IQ requirements under Listing 12.05. The issue on appeal is whether her obesity qualifies as "a physical . . . impairment imposing an additional and significant work-related limitation of function" under subparagraph C of the Listing.

        Substantial evidence supports the ALJ's determination that plaintiff did not meet the requirements of Listing 12.05C. In both her pre-hearing brief and at the hearing, plaintiff asserted that she was disabled under Listing 12.05D, a listing which did not require a finding of obesity or any other significant physical or mental limitation (AR 147, 338).[3] Although plaintiff did not assert an impairment due to obesity, the ALJ questioned plaintiff about her height (5'4") and weight (230 pounds) (AR 348). Plaintiff testified that this was her current and "steady weight" (testimony from which the ALJ could infer that plaintiff was able to perform her previous employment at that weight) (AR 348). Plaintiff also testified that she helped her mother with housework, that she does a good

---

[3] Subparagraph D of Listing 12.05 provides as follows:

    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.

Listing 12.05D, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

job of sweeping and mopping the floor, that she shops for clothes, that she washes the dishes, and that she cooks with her mother helping to measure the ingredients (AR 348-54). Plaintiff's testimony did not reflect that she suffered from any limitations - let alone "significant" limitations - related to obesity.

Now, plaintiff contends that her height and weight meet the classification of "extreme obesity" and that the ALJ failed to address this condition. Plaintiff's Brief at pp. 10-12. Although the agency deleted obesity from the Listing of Impairments, the Commissioner views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-01p, text available at [www.ssa.gov](www.ssa.gov) . However, the Commissioner is not required to consider obesity as an impairment in every case. As the court stated in *Bledsoe v. Barnhart*, 165 Fed.Appx. 408 (6th Cir. 2006):

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe*, 165 Fed.Appx. at 411-412.

9

Assuming that plaintiff met the criteria for extreme obesity, this classification did not equate with a finding that she was disabled or significantly limited by that condition. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988). The medical record is void of any physical limitations placed on plaintiff due to her obesity. While plaintiff told a consultative mental examiner that she was "always teased about my weight," there is no evidence that plaintiff was restricted by her weight (AR 225). During the examination, plaintiff also denied having any medical problems (AR 225). The issue of obesity was neither listed as a basis for plaintiff's disability claims nor raised as an impairment during the administrative hearing. Plaintiff's claim that she suffers from significant limitations due to obesity is not supported by the medical evidence. Accordingly, substantial evidence supports the ALJ's decision that plaintiff did not meet the requirements of Listing 12.05C.

> **B. Was Ms. Dukes' right to due process violated, when the ALJ failed to proffer to Ms. Dukes' counsel, post hearing evidence that was admitted into the record, and relied on by the ALJ in his decision?**

**1. Background**

During the course of the administrative hearing held on January 6, 2009, plaintiff recalled meeting with Mr. Gary Kyper at the Michigan Rehabilitation Services (AR 356-60). Plaintiff's testimony reflects that she did not benefit from Mr. Kyper's assistance with vocational training:

ALJ:    Okay. Do you think working with [Mr. Kyper] did you any good?

| | |
|---|---|
| CLMT: | No, Sir. |
| ALJ: | Do you think he was trying to help you or was he just trying to pass you down the line somewhere? |
| CLMT: | Pass me down the line somewhere. |

(AR 359).

The ALJ then offered to order plaintiff's records from Mr. Kyper:

| | |
|---|---|
| ALJ: | Okay. Counsel, I think what I would be prepared to do at this point is I'd -- since we're probably more familiar with the addresses and so forth of that institution [i.e., Michigan Rehabilitation Services], if we could get your client to sign a release, I could order whatever Mr. Kyper may have to offer. |
| ATTY: | Sure. |
| ALJ: | We'll ask you to sign a release before you leave here then, ma'am, and we'll order those records up. Do you have any further authorizations? Ms. Dukes, I don't think I have anything further for you at this point [.] |

(AR 360).

Near the close of the hearing, the ALJ stated that he was going to give himself and his office time to order the vocational rehabilitation records:

| | |
|---|---|
| ALJ: | Well, thank you very much and what we're going to do is, we're to give myself and my office time to order the vocational rehabilitation records of Mr. Kyper. And then when I get those in, I will have a complete record here and then I'll go ahead and issue a Decision. When I send the Decision out, I'm going to send a copy to you and also to your representative. I would ask you to contact your representative after you get the Decision, because you will probably have questions about what the Decision means and he can counsel you as to what the Decision means and if you need to follow up on it in any particular way. |

11

```
CLMT:     Okay.

ALJ.      Okay?

CLMT:     Okay.
```

(AR 382).

After the hearing, in a letter dated January 7, 2009, a senior case technician at the Social Security Administration requested that the Michigan Rehabilitation Services provide "[a]ll records from 2005 to present date" (AR 251). The request included plaintiff's written authorization to disclose the requested records and included a notation that plaintiff was sent a copy of the request (AR 251-53). Michigan Rehabilitation Services responded to the request, providing 78 pages of records (AR 252-330). The Social Security Administration received the records in March 2009 [4] and the ALJ issued his written decision denying benefits on April 13, 2009 (AR 14-24, 251).

### 2. Legal standard applicable to plaintiff's Due Process claims

Plaintiff contends the ALJ violated her due process rights by failing to follow the procedures set forth in HALLEX[5] and by failing to allow plaintiff and her counsel an opportunity to review her vocational records generated at the Michigan Rehabilitation Services in violation of the rule set forth in *Mullane v. Central Hanover Bank & Trust* Co., 339 U.S. 306 (1950). Under the Fifth Amendment, "[d]ue process requires that a social security hearing be 'full and fair.'" *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996), quoting *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). The court must consider three factors in determining whether a hearing meets the dictates

---

[4] The transmittal letter is stamped as received by the Grand Rapids Office of Disability Adjudication & Review on March 6, 2009 and March 30, 2009 (AR 251).

[5] "HALLEX" refers to the Social Security Administration's procedural manual, which sets forth safeguards and procedures for the agency's administrative proceedings. *Robinson v. Barnhart*, 124 Fed. Appx. 405, 410 (6th Cir. 2005).

of due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Flatford*, 93 F.3d at 1306, quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). *See also, Ferriell v. Commissioner of Social Security*, 614 F.3d 611, 620 (6th Cir. 2010) ("[t]o determine whether such a hearing passes constitutional muster, a court must look to the three factors identified by the Supreme Court in *Mathews v. Eldridge*").

### 3. Discussion

#### a. The three *Eldridge* factors

Although neither party addressed the three factors identified in *Eldridge*, the court is compelled to consider these factors when deciding the question of whether plaintiff's hearing met the dictates of due process. *See Ferriell*, 614 F.3d at 620; *Flatford*, 93 F.3d at 1306. As to the first factor, plaintiff's private interest in this case is her interest in a fair determination of her qualification (or lack thereof) for Social Security disability benefits and a meaningful opportunity to present her case. *Adams v. Massanari*, 55 Fed. Appx. 279, 286 (6th Cir. 2003); *Flatford*, 93 F. 3d at 1306.

As to the second factor, the court finds that plaintiff had no "risk of an erroneous deprivation of such interest through the procedures used" by the ALJ, because plaintiff authorized the ALJ to obtain her vocational records. The administrative record reflects that plaintiff did not obtain her vocational records from Michigan Rehabilitation Services prior to the hearing. When plaintiff referred to her interaction with Michigan Rehabilitation Services at the hearing, the ALJ proposed to have his office obtain these vocational records as an accommodation to plaintiff, add

them to the existing administrative record and then issue a decision based upon a complete record. By consenting to this course of action and providing a signed release for the ALJ's use in obtaining this post-hearing evidence, plaintiff waived her right both to review and to contest this new evidence.

Finally, as to the third factor, the Government has an interest in judicial efficiency. In this regard, the HALLEX procedures allows for a Social Security claimant to waive additional proceedings to review or contest post-hearing evidence. The procedure upon which plaintiff relies, HALLEX I-2-5-28E, "Disclosures of New Evidence After the Hearing," provides in pertinent part as follows:

> If an ALJ receives new evidence after the hearing from a source other than the claimant, and the ALJ proposes to enter the evidence into the record as an exhibit, the ALJ must give the claimant and the claimant's representative the opportunity to review and comment on the evidence and to request a supplemental hearing *unless: the claimant or the representative knowingly waived the right to review the evidence and to appear at a supplemental hearing*, or the ALJ is prepared to issue a fully favorable decision.

*See* HALLEX I-2-5-28E, available at http://www.ssa.gov/OP_Home/hallex/hallex/html. (emphasis added).

Here, the ALJ utilized a procedure to streamline the hearing process, which was consistent with HALLEX I-2-5-28E. Plaintiff could have rejected the ALJ's proposed course of action, and extended the time frame of the her administrative action by obtaining the records herself, requesting a review of the records, requesting an opportunity to respond to the records, and/or requesting a supplemental hearing on the records. However, plaintiff agreed to the ALJ's proposed course of action and authorized the ALJ to obtain the vocational records and to issue a decision without further proceedings. In light of plaintiff's actions, no additional or substitute procedural

requirements were necessary.

Examined under the three *Eldridge* factors, the court concludes that the ALJ followed a procedure which resulted in a full and fair hearing of plaintiff's Social Security claim. Accordingly, there was no violation of plaintiff's due process rights under the Fifth Amendment.

### b. Due process violation arising from HALLEX

Plaintiff contends that the ALJ admitted the Michigan Rehabilitation Services records into evidence without giving notice to her as required by HALLEX I-2-5-28E. Plaintiff's contention is without merit for three reasons. First, while the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings. *See Bowie v. Commissioner of Social Security*, 539 F.3d 395, 399 (6th Cir. 2008) (observing that the procedural guidance in HALLEX is "not binding on this court"). Second, the agency procedures set forth in HALLEX, in and of themselves, do not create federal due process rights for claimants. "No circuit has held that the HALLEX creates *constitutional rights* because, of course, only the Constitution, not an agency's rules or procedures, is the source of such rights." *Davenport v. Astrue*, 417 Fed.Appx. 544, 547-48 (7th Cir. 2011) (emphasis in original). Third, as the court previously discussed, even if HALLEX was binding on this court, the ALJ did not violate HALLEX I-2-5-28E. Accordingly, plaintiff's claim of a due process violation arising from an alleged violation of HALLEX will be denied.

### c. Due process violation arising from *Mullane*

Plaintiff has cited *Mullane* for the propositions that "[a] claimant has an absolute right to pre-decision proffer of evidence upon which an ALJ relies to deny benefits" and that "[c]onsistent with the U.S. Constitution requiring pre-decision notice of the evidence upon which an adjudicator

15

relies, [plaintiff] was entitled to pre-decision notice of the Michigan Rehabilitation records that the ALJ admitted into the record post hearing at Exhibit 6F." Plaintiff's Brief at pp. 12-13. Plaintiff's citation to *Mullane* is misleading. *Mullane* did not set forth an explicit rule regarding a Social Security claimant's right to review post-hearing evidence obtained by an ALJ. Rather, *Mullane* involved "the constitutional sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund established under the New York Banking Law." *Mullane*, 339 U.S. at 307. In resolving this issue, the Supreme Court stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," and held that under the facts in that case, the statutory notice of newspaper publication by the trust company was insufficient with respect providing notice "as to known beneficiaries of known place of residence" and that the trustee had no tenable grounds for failing to give these known beneficiaries notice of the proceedings by ordinary mail rather than by the statutory publication. *Id.* at 318-19 (emphasis added).

Plaintiff has failed to articulate how the Supreme Court's ruling in *Mullane*, a decision which addressed the constitutionality of a trustee's notice by publication, supports her claim that the ALJ's procedure for obtaining post-hearing evidence violated due process. Plaintiff's cryptic citation of *Mullane*, without further explanation, does not set forth a legal basis for plaintiff's due process claim. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument

unpersuasive, and indeed waived.

### IV.  CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity, taken together with the testimony of the vocational expert, provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the relevant economy that plaintiff can perform. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g).  A judgment order consistent with this opinion shall be issued forthwith.

Dated:  September 19, 2011    /s/ Hugh W. Brenneman, Jr.
    HUGH W. BRENNEMAN, JR.
    United States Magistrate Judge

17